**Salvatore CURIALE, Superintendent of Insurance of the State of New York, as Liquidator of Union Indemnity Insurance Company, in Liquidation, Plaintiff,**

v.

**AMBERCO BROKERS LTD., Beneficial American Insurance Company Ltd., Bison Insurance Company Ltd., St. John's Insurance Company Ltd., Cambridge Reinsurance Company Ltd., Commonwealth Insurance Company Ltd., Horizon Insurance Company Ltd., Mentor Insurance Ltd., and Universal Marine Insurance Company, Ltd., Defendants.**

No. 85 Civ. 1110 (PKL).

United States District Court,
S.D. New York.

June 17, 1991.

Anderson Costigan, New York City (William F. Costigan and Patricia A. Griffin, of counsel), for plaintiff.

Cravath, Swain & Moore, New York, New York City (Paul M. Dodyk, of counsel), for Commonwealth Ins. Co., Ltd.

Mendes & Mount, New York City (William R. Fried, of counsel), for Bison Ins. Co., Ltd., St. John's Ins. Co., Ltd., and Horizon Ins. Co., Ltd.

Miller, Singer, Raives & Brandes, P.C., New York City (Nancy K. Eisner, of counsel), for Beneficial American Ins. Co., Ltd.

Driscoll & Delaney, New York City (Michael J. Comerford, of counsel), for Amberco Brokers, Ltd.

## OPINION AND ORDER

LEISURE, District Judge,

Union Indemnity Insurance Company ("Union") commenced this diversity action on February 8, 1985. Since July 1985, Union has been in liquidation proceedings in state court; for much of that time, this action has been on this Court's suspense docket. This matter having become active in September 1990, defendants now move the Court to dismiss this case on abstention grounds.

## BACKGROUND

This action arises out of a quota share reinsurance agreement effective January 1, 1981, between Union and a group of reinsurers. Union brought this action against the reinsurers and Amberco Brokers Ltd. ("Amberco"), allegedly the intermediary that negotiated the agreement, alleging, *inter alia*, breach of the reinsurers' obligation to reimburse and indemnify Union for certain losses, and negligence, misrepresentation and breach of contract and fiduciary duty by Amberco. Defendants maintain that Union breached the agreement by failing to keep accurate books and records or accurate accounts of losses paid or payable. Defendants also contend that Union was fraudulently mismanaged by its parent corporation.

On July 16, 1985, Union was placed into liquidation by order of the New York State Supreme Court. The liquidator, the Super-

intendent of Insurance of the State of New York, Salvatore Curiale (the "Superintendent" or the "Liquidator"), was substituted as plaintiff in the action before this Court. On June 30, 1986, this action was placed on this Court's suspense calendar by Judge John M. Walker, to allow time for the Liquidator to review Union's books and records and to determine the amounts allegedly owed by each of the reinsurers. The case was restored to the Court's active calendar on June 3, 1988, but was later closed for lack of activity by order of Chief Judge Charles L. Brieant on June 27, 1989.

Liquidation proceedings have continued before Justice Ira Gammerman of the New York Supreme Court. Also before Justice Gammerman is an interpleader action to determine the distribution of reinsurance proceeds under another reinsurance agreement.[1] The Superintendent has also brought an action in the liquidation court against Union's corporate parent, Frank B. Hall & Co., Inc. ("Hall"), alleging mismanagement and fraud by Hall.[2] The parties to the *Hall* action have apparently submitted a settlement agreement to Justice Gammerman for approval.

The reinsurers in *Michigan National* argued that the allegations and evidence of mismanagement by Union's parent submitted by the Superintendent in the *Hall* action constituted judicial admissions under New York law, and that their reinsurance agreements should be rescinded for Union's failure to disclose these material facts. The reinsurers' motion for summary judgment on this ground was granted by Justice Gammerman in a decision dated October 16, 1989. Characterizing the issue as one of first impression in New York, with important policy ramifications for all New York liquidations, the Superintendent moved to reargue this decision. The motion to reargue was heard on July 13, 1990, and remains *sub judice*.

---

1. *In the Matter of Liquidation of Union Indemnity Ins. Co. (Action No. 1)/Michigan National Bank—Oakland v. American Centennial Ins. Co. (Action No. 2)*, 137 Misc.2d 575, 521 N.Y.S.2d 617 (1987) (consolidated cases). This action will be referred to as *"Michigan National."*

2. *Corcoran v. Frank B. Hall & Co.*, 149 A.D.2d 165, 545 N.Y.S.2d 278 (1989). This action will be referred to as *"Hall."*

This action was reopened on May 30, 1990, and was reassigned to this Court on June 12, 1990. At a conference before this Court on September 13, 1990, the case was restored to the active docket. Defendants Beneficial American Insurance Company Ltd., Bison Insurance Company Ltd., Commonwealth Insurance Company Ltd., St. John's Insurance Company Ltd., Horizon Insurance Company Ltd., and Amberco now move this Court to dismiss this action under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[3] Defendants cite the following considerations in support of their argument that abstention is appropriate in this case:

1. the Superintendent has conceded that issues common to this case and the [*Michigan National* action] are complex and unsettled;

2. New York state has a substantial interest in the resolution of any dispute involving an insolvent insurer;

3. the Superintendent has conceded that the outcome of the Reinsurers' *Hall* defense will have a broad impact on the liquidation of Union Indemnity;

4. deference to the unified New York State liquidation proceeding is favored because of the experience of federal courts in the bankruptcy arena and the McCarran–Ferguson Act;

5. the parties here will be permitted to effectively raise their claims and defenses in the New York State liquidation proceeding;

6. there is no issue of federal law involved in this case;

7. nothing has transpired in federal court since this action was commenced; and

8. abstention will avoid the inconsistent resolution of like controversies.

Reply Memorandum of Law in Support of Defendants' Motion to Dismiss on Abstention Grounds at 21.

DISCUSSION

A. *Burford Abstention*

■ As a general rule, the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River, supra*, 424 U.S. at 817, 96 S.Ct. at 1246. Nevertheless, the Supreme Court has carved out a number of exceptions to this rule, under which federal courts may abstain from exercising their jurisdiction in a particular case.

In *Burford*, the Supreme Court held that a federal district court could, "in its sound discretion," 319 U.S. at 317, 63 S.Ct. at 1099, decline to exercise its jurisdiction over a case involving a complex state regulatory scheme, particularly where "[c]onflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts." *Id.* at 334, 63 S.Ct. at 1107. The Court found that abstention was proper in that case because the state of Texas had established a system of centralized judicial review of administrative regulation of oil and gas conservation and development.

Over the years, the Supreme Court has refined the *Burford* doctrine as follows:

Where timely and adequate state court review is available, a federal court ... must decline to interfere with the proceedings or orders of state agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298

---

**3.** Defendant Amberco has joined in the motion by letter. Defendants Mentor Insurance Ltd., Cambridge Reinsurance Company Ltd., and Universal Marine Insurance Company Ltd. are currently in liquidation in Bermuda.

(1989) (quoting *Colorado River, supra,* 424 U.S. at 814, 96 S.Ct. at 1244–45).

The Court has noted, however, that "[w]hile *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *Id.* Thus, if the federal court can resolve the issue before it without "unduly intrud[ing] into the processes of state government or undermin[ing] the State's ability to maintain desired uniformity ... [t]he principles underlying *Burford* are ... not implicated." *Id.* at 363–64, 109 S.Ct. at 2515.

Courts in this Circuit have frequently found *Burford* abstention to be appropriate in cases that might interfere with "New York's unified administrative and judicial framework for the administration of the estates of insolvent insurance companies." *Law Enforcement Ins. Co. Ltd. (LEICL) v. Corcoran,* 807 F.2d 38, 39 (2d Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987). Regulation of insurance companies has been declared by Congress to be a matter for the states in the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15, and the rehabilitation and liquidation of insurance companies are covered by detailed provisions of Article 74 of the New York insurance law. *See* N.Y. Ins. L. §§ 7408–15 (adopting the provisions of the Uniform Insurance Liquidation Act).

New York courts have generally found that all claims and proceedings involving an insolvent insurer should be consolidated under the "single management of one court." *Knickerbocker Agency v. Holz,* 4 N.Y.2d 245, 173 N.Y.S.2d 602, 609, 149 N.E.2d 885, 890 (1958); *see, e.g., General Accident Fire & Life Assurance Corp. v. Hawkins,* 115 A.D.2d 357, 495 N.Y.S.2d 398 (1st Dep't 1985); *Powell v. All City Ins. Co.,* 74 A.D.2d 942, 426 N.Y.S.2d 135 (3d Dep't 1980); *see also LEICL, supra,* 807 F.2d at 43–44 (citing cases); *Washburn v. Corcoran,* 643 F.Supp. 554, 556 (S.D.N.Y. 1986).

This has particularly been the rule when a party has sought to enforce an arbitration provision against the Liquidator of an insolvent insurance company. In such cases, courts have held that the New York State Supreme Court has exclusive jurisdiction, *see, e.g., Corcoran v. Ardra Ins. Co. ("Ardra II"),* 77 N.Y.2d 225, 566 N.Y.S.2d 575, 578–79, 567 N.E.2d 969, 972–73 (N.Y. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2260, 114 L.Ed.2d 712 (1991); *Knickerbocker, supra,* 4 N.Y.2d at 250–54, 173 N.Y. S.2d at 607–09, 149 N.E.2d at 889–90, and federal courts have frequently abstained under *Burford. See, e.g., Corcoran v. Ardra Ins. Co. ("Ardra I"),* 657 F.Supp. 1223 (S.D.N.Y.1987) (Leisure, J.), *appeal dismissed and petition denied,* 842 F.2d 31 (2d Cir.1988).

Courts have also abstained in cases involving challenges to the Superintendent's administrative determinations and rulemaking. *See, e.g., Stephens v. Cooper,* 746 F.Supp. 292 (E.D.N.Y.1990). The Second Circuit, in discussing *Burford,* has noted that in that case, federal review "would have entailed a reconsideration of the state administrative decision, carrying with it the potential for creating inequities in the administration of the state scheme. *Burford* thus suggests that proper respect for the expertise of state officials ... counsels restraint on the part of the federal courts." *Levy v. Lewis,* 635 F.2d 960, 964 (2d Cir. 1980).

In *Levy,* a case involving issues of federal law, the Second Circuit further opined:

> Federal review of the Superintendent's treatment of [a claim against an insolvent insurer] would create a potential for piecemeal review, for continual interruption of liquidation proceedings and for unequal treatment of liquidation claimants. We think it best then that the federal questions be left in the first instance to the Superintendent with review available in the state courts and ultimately in the United States Supreme Court.

*Id.*

Following this reasoning, district courts have abstained when federal law claims were "inextricably intertwined with com-

plex and unsettled issues of state law," *Ardra I, supra,* 657 F.Supp. at 1231, and even where the state law issues were settled. *See Corcoran v. Universal Reinsurance Corp.,* 713 F.Supp. 77 (S.D.N.Y.1989) (Leval, J.) (remanding case brought by Superintendent in state court and removed to federal court by defendant reinsurer).

Had this case been brought against the insolvent insurer, or filed by the Liquidator in state court and removed to federal court, and had the Liquidator requested abstention, this Court would have no hesitation in granting that request, based on the weight of authority. The validity of defendants' rescission argument constitutes a significant and unsettled question of New York law that is potentially dispositive of this action and many other claims brought by the Superintendent on behalf of insolvent insurers.

The chief reason for pause in this case is that the Liquidator opposes abstention, preferring to continue the case in the forum in which it was begun by the insurer prior to its insolvency. The Liquidator argues that the "fulfillment of his statutory duties to marshal assets and to protect the interests of policyholders, stockholders and the public ... is in no way jeopardized by the continuation of this particular case in federal court. There is nothing in the New York regulatory scheme or the federal abstention doctrine which artificially limits the Liquidator's jurisdictional options, as compared to other litigants, in deciding where to commence or maintain an action." Letter to Hon. Peter K. Leisure dated Jan. 23, 1991, at 4.

Despite the frequency of *Burford* abstention in cases involving insolvent insurers, the Second Circuit has never imposed a blanket policy of abstention in such cases. Rather, it has stated that New York's system for rehabilitating and liquidating insurance companies "is the type of regulatory scheme that warrants serious consideration of abstention when the question before the court is a novel one," *Ardra I, supra,* 842 F.2d at 37, and has stressed the "strong public interest in promoting the Superintendent's efficient performance of his offi-

cial duties." *Id.* at 35. The New York Court of Appeals has also referred to the state legislature's grant to the Superintendent of "plenary powers to manage the affairs of the insolvent and to marshal and disburse its assets." *Ardra II, supra,* 566 N.Y.S.2d at 578, 567 N.E.2d at 972.

In a case involving a state-regulated utility, the Second Circuit held that the opinion of the state Attorney General that an award of damages in federal court would enhance, rather than conflict with, the state regulatory scheme was "entitled to weight, particularly when that opinion is not contradicted by the responsible state agency and the import of the Attorney General's opinion is that the federal court should *not* abstain." *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1309 (2d Cir.1990). However, this was only one of a "complex of considerations," and in finding abstention inappropriate the Court also gave considerable weight to the fact that only federal law claims were presented. *Id.* at 1308–09.

Similarly, Judge Michael B. Mukasey of this District solicited the opinion of New York's Superintendent of Insurance in a case in which one party had moved for abstention. *See Great Am. Ins. Co. v. Ticor,* No. 89 Civ. 7928, 1990 WL 238848, 1990 U.S. Dist. LEXIS 17477 (S.D.N.Y. Dec. 27, 1990). The Superintendent took the view that the resolution of issues of indemnification among the parties to the federal suit would not preclude the assertion of any claims by the insolvent insurer in liquidation proceedings. However, Judge Mukasey noted that the action before him involved "only the past and present parent [companies] of [the insolvent insurer], not [the insolvent company] itself." *Id.* Judge Mukasey also distinguished cases such as *Ardra I* and *Levy,* on the ground that "neither the company in liquidation nor the Liquidator" was a party in the case before him, and that the Liquidator could not be bound by any decision in that case. *Id.*

In contrast, the Liquidator as plaintiff and the assets of Union itself are directly affected by the instant suit. However, this

case does not involve a claim against Union's assets, but only a potential enhancement of those assets.[4] Further, it does not involve any challenge to administrative decisions rendered or regulations promulgated by the Superintendent. While an unsettled question of state law is present, this Court may be guided by the opinion of the state courts, which have a considerable head start in settling the issue. Furthermore, this Court finds that the opinion of the Superintendent should be respected in this situation, in which federal adjudication does not appear to be clearly disruptive of state policy.[5] Indeed, the Superintendent argues that abstention in this case "would only undermine the state scheme by depriving the Liquidator of an otherwise available and effective forum" and would hinder his efforts to recover assets for the insolvency estate in the most efficient manner. Memorandum in Opposition to Defendants' Motion to Dismiss on Abstention Grounds at 10. Accordingly, this Court cannot find that continued exercise of its jurisdiction over this case will significantly impair either the liquidation proceedings or New York's overall scheme of insurance regulation. Defendants' motion for abstention under *Burford* is therefore denied.

## B. Colorado River Abstention

■ Under the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), a court may, in its discretion, decline to exercise its jurisdiction in "exceptional circumstances" for reasons of "'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). The *Colorado River* doctrine has been applied when parallel proceedings are underway in state and federal courts, and "the exercise by one court of its jurisdiction would tend to impede or embarrass the other court in the exercise of its jurisdiction." *LEICL, supra*, 807 F.2d at 41–42.

The *Colorado River* Court identified the following factors to be considered: jurisdiction by either court over any *res* or property, the inconvenience of the federal forum, the likelihood of piecemeal litigation, and the order in which each court obtained jurisdiction. *Id.* at 818, 96 S.Ct. at 1246–47. The Court later noted that the decision "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). The *Cone* Court also added two new factors for consideration: whether state or federal law controls, and whether the rights of the party invoking federal jurisdiction will be adequately protected in the state proceeding. *Id.* at 23–27, 103 S.Ct. at 941–43.

In the case at bar, no parallel proceeding has been brought in any state court. While insolvency and other proceedings are before the New York Supreme Court, and that Court has under consideration a legal issue that is likely to be present in the instant case, the dispute that is the subject of this lawsuit is not before any other court.

Even the commencement of, for example, a declaratory judgment action in state

---

**4.** While the defendants argue that their affirmative defense claiming a set-off of monies allegedly owed by Union will act to draw assets away from the estate, and that therefore this case is indistinguishable from a direct claim against an insurer, this Court is unpersuaded by their reasoning.

**5.** Compare the Supreme Court's repeated holding in cases involving potential abstention under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), that a

"State may of course voluntarily submit to federal jurisdiction even though it might have had a tenable claim for abstention." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986); *see also Brown v. Hotel Employees*, 468 U.S. 491, 500 n. 9, 104 S.Ct. 3179, 3184 n. 9, 82 L.Ed.2d 373 (1984); *Ohio Bureau of Employment Servs. v. Hodory*, 431 U.S. 471, 479–80, 97 S.Ct. 1898, 1903–04, 52 L.Ed.2d 513 (1977).

court by defendants in this matter would not necessarily lead to abstention. Many of the factors enumerated in *Colorado River* and *Cone* are absent from this case. No *res* is involved; no argument has been made that the federal forum is inconvenient; and no court has prior jurisdiction over this matter. While defendants conceivably might, by commencing such an action, create a danger of piecemeal litigation, this Court's analysis would still be weighted heavily in favor of exercising its jurisdiction. *See LEICL, supra,* 807 F.2d at 43 (*Colorado River* abstention not appropriate in action against insolvent insurer; abstention required under *Burford*).

As the Supreme Court has stated, "[o]nly the clearest of justifications will warrant dismissal." *Colorado River, supra,* 424 U.S. at 819, 96 S.Ct. at 1247. Under the facts of this case, this Court finds no grounds for abstention under *Colorado River,* and defendants' motion for dismissal of this action on abstention grounds is denied.[6]

## CONCLUSION

Defendants' motion to dismiss the complaint on abstention grounds is denied in its entirety.

SO ORDERED

---

**6.** The Superintendent also argues that defendants' agreement in the contract of reinsurance to submit to the jurisdiction of any court of competent jurisdiction precludes their motion for abstention. While this Court finds the Superintendent's argument on this point to be without merit, the Court's denial of defendants' motion under *Burford* and *Colorado River* obviates the need to decide the waiver issue.